IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Raqiya Whyte | ) |
| a/k/a exotic dancer "Queen" | ) |
| 511 Glen Granite Rd. | ) |
| Reisterstown, MD 21136 | ) |
| | ) |
|     On Behalf of Herself and | ) |
|     All Others Similarly Situated | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) JURY DEMAND |
| PP&G, INC. | ) |
| d.b.a. NORMA JEAN'S NITE CLUB | ) |
| 10 Custom House Ave | ) |
| Baltimore, MD 21202 | ) |
| | ) |
|     and | ) |
| | ) |
| LISA DIANE IRELAND | ) |
| 10 Custom House Ave | ) |
| Baltimore, MD 21202 | ) |
| | ) |
| | ) |
|   Defendants. | ) |

## COLLECTIVE ACTION COMPLAINT

Comes now the Plaintiff  Raqiya Whyte a/k/a exotic dancer "Queen" ("Plaintiff") by and

through her undersigned counsel, hereby files this Collective Action Complaint complaint

against the Defendants PP&G, INC ("Defendant") and Defendant LISA DIANE IRELAND  is

the Owner and Manager of PP&G, INC and/ or NORMA JEAN'S NITE CLUB, to recover

damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et*

*seq*. ("FLSA") and to recover damages under the Maryland Wage Payment and Collection Law

("MWPCL"), Maryland Code, Labor and Employment Article §§ 3-501 *et seq*. and common law

torts.

1

<u>PARTIES AND JURISDICTION</u>

1. Plaintiff is an adult resident of the Reisterstown, MD.

2. Plaintiff's consent to participate as plaintiff in an FLSA collective action.

3. Defendant PP&G, INC  is an incorporated business formed under the laws of the State of
    Maryland with its principal place of business in Baltimore, Maryland. Defendant LISA
    DIANE IRELAND  is the Owner and Manager of PP&G, INC and/ or NORMA JEAN'S
    NITE CLUB that set and enforced the rules relating to Plaintiff and other similarly
    situated individuals. Defendants are in the business of operating a strip club known as
    PP&G, INC and/ or NORMA JEAN'S NITE CLUB featuring nude exotic female
    dancers.  At all times during Plaintiff's and other similarly situated individuals
    employment with the Defendants, Defendant IRELAND was Owner/Manager of PP&G,
    INC and/ or NORMA JEAN'S NITE CLUB, was responsible for setting the rules that
    Plaintiff was required to follow and determined Plaintiff's rate and method of pay. At all
    times relevant, Defendants were Plaintiff's and other similarly situated individuals
    "employers" for purposes of the FLSA and MWPCL.

4. During Plaintiff's employment, Defendants were engaged in commerce or in the production of
goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).  At all
times relevant, Defendants qualified as an "enterprise" within the meaning of § 3(r) of the FLSA
(29 U.S.C. § 203(r)).  At all times relevant, Plaintiff and other similarly situated individuals were
individual employees engaged in commerce or the production of goods for commerce as required
by 29 U.S.C. §§ 206-207.

5. This Court has jurisdiction over Defendants pursuant to the Maryland Wage Payment and
Collection Law ("MWPCL"), Maryland Code, Labor and Employment Article §§ 3-501 *et seq*.
Venue in this Court is as Defendants acts occurred in Baltimore City, Maryland.

FACTS

6. Plaintiff was employed by Defendants from September 2010 through September 9, 2013[1] as an exotic dancer. At all times, Plaintiff's primary job duty was as an exotic dancer at Defendants' Strip Club in Baltimore, Maryland. Defendants' Strip Club features nude exotic dancers. Plaintiff performs a duty that is central and integral to Defendants' business. Plaintiff possessed no specialized skill in dancing and the Defendants did not require any level of education or previous certification (such as, by way of example, completion of a pole dance class) before hiring Plaintiff or other dancers.

7. During her term of employment, from September 2010 until September 2013, Plaintiff regularly worked 4 shifts per week for a total of 40 hours per week.   From September 2010 through September 2013 Plaintiff was required to pay out $45 of her tips to the Defendants and an additional $20 if she was late for her shift. Plaintiff was required to entertain customers "according to means and methods prescribed by" management. The managers kept records of the lap-dances that Plaintiff preformed each day and night shift. Plaintiff was required to appear on stage to dance at fixed times, comply with a dress code and wear costumes in compliance with management requirements. While in Defendants' employ, Defendants failed and refused to pay Plaintiff and all other similarly situated individuals any wages for work duties performed.

8. Defendant's required to pay the DJ (Disc Jockey) for the right to work at the club, $10-$15 per night in DJ fees out of her tips.

9. The Defendants hired and fired dancers, determined what hours they worked, and hired its dancers based solely on whether they 'look good' rather than individual performance experience

---

[1]

    Plaintiff's damages extends back only 3 years from the September 24, 2013 filing date

or talent. Many of dancers who have been hired by the Defendants have never danced at a club before, so they had zero experience in exotic dancing but were still hired based on looks alone and not any skill level. Defendants did not even require the newly hired dances to have a certificate of completion from a pole dance class.

10. Management at the club determines which dancers are going to work on any given shift; how many shifts they'll have in a day; how long each of the shifts are; what the dancers can/cannot dance to.

11. Plaintiff and all other similarly situated individuals were required to follow all of the clubs rules and regulations and failure to follow the rules will result in suspension or termination.

12. The only money Plaintiff and all other similarly situated individuals made at the club is from tips that they received from customers. They are then required to use her tips to pay the club their mandatory fees.

13. Plaintiff and all other similarly situated individuals are required to pay DJ fees and clean up fees each day.

14. Plaintiff and all other similarly situated individuals are required to pay the Club Lap dance fees.

15.  Plaintiff and all other similarly situated individuals paid the club the following lap dance fees out of her tips from customers.

16. Plaintiff and all other similarly situated individuals were not paid wages and under the minimum wage laws for tipped employees that she is and all other similarly situated individuals are owed unpaid wages.

17. Plaintiff and all other similarly situated individuals did not share in the profits of the Club.

18. During her employment at the Defendants' Strip Club, Plaintiff and all other similarly

situated individuals were completely dependent on the "tip" income that she received from the customers at the club.

19. The management of the Club scheduled the times and days Plaintiff and all other similarly situated individuals were to work and Plaintiff and all other similarly situated individuals were fined if she failed to work according to the schedule established by Club management.

20. The Defendants established the rates for the services that Plaintiff and all other similarly situated individuals provided to customers of the Club. Plaintiff had no voice in any of the pricing for the services she provided.

21. Plaintiff and all other similarly situated individuals were treated as an employee of the Club and she was required to attend mandatory meetings or she would be terminated.

22. Plaintiff and all other similarly situated individuals did have to provide their own costumes for dancing, however Club management dictated the type of costumes they could wear.

23. Plaintiff's and all other similarly situated individuals job was to entertain the customers of the Club. It was the Club's responsibility to bring in the customers. Management established all rules and policies from the hours the business would be open down to the songs they could dance to.

24. Plaintiff and all other similarly situated individuals had no involvement in or responsibility for the operation of the business.

25. At all times, Plaintiff and all other similarly situated individuals were employees of Defendants and was never an independent contractors.

26. Notwithstanding that Defendants paid Plaintiff and all other similarly situated individuals nothing for her hours worked each week; Defendants took deductions and withheld money from

Plaintiff's and all other similarly situated individuals tips. Additionally, Defendants charged  and all other similarly situated individuals with late fees and fines for calling in sick or arriving late to work.

27. Plaintiff had taken a pre-planned vacation for the latter part of the summer and returned on September 9, 2013.

28. Ms. Whyte had worked the day shift at Norma Jeans Nite Club on September 9, 2013. Upon her returning to the Norma Jeans to work the night shift, she was stopped by Walter Robinson, the manager of the club. Mr. Robinson asked her if she had a conversation with anyone about this club. She told Mr. Robinson that she told people about the tip outs that the club was charging dancers. Mr. Robinson then told her they told him that she was fired and banned from the club because she was listed as a witness in a lawsuit that was filed against the club.  Ms. Whyte asked Mr. Robinson who is they and he stated Pete Ireland and Lisa Ireland. Lisa is the owner of the club and Pete is her husband.

29. Plaintiff was named as a witness for another Plaintiff in Unique Butler v. PP &G, Inc. (WMN-13-430) which is the same Defendant.

30. Plaintiff participated in a protected activity were she gave testimony of Defendant's illegal practices Defendant had been involved in regarding FLSA.

31.  Defendant received information that  Ms. Whyte as a witness in another FLSA case Unique Butler v. PP &G, Inc. (WMN-13-430) and she was going to proffer about Defendant's illegal activities of taking money from Plaintiff.

32. Plaintiff listed her as a witness and disclosed her proffered testimony to Defendant on August 8, 2013.

33. Her proffered testimony was that Defendant was taking dancer's fees and engaged in

activities that would be a violation of the FLSA.

34. She was a witness that was listed to testify at trial in the Unique Butler v. PP &G, Inc. (WMN-13-430)case. Defendant PP&G was placed on noticed that they were in violations of the Fair Labor Standard Act and the Maryland equivalent in February 2013 when they were sued in Unique Butler v. PP &G, Inc. (WMN-13-430). After willfully and intentionally continuing with the illegal practices after they had knowledge, Defendants have subjected themselves to punitive damages.

35. A United States District Court Judge for the District of Maryland, Judge Roger W. Titus in Latoya Francis v. Ronald Hunt, et. al. RWT 04-cv-637 on February 2, 2005, has already ruled as a matter of law that an exotic dancer is an employee as that term is used in the Fair Labor Standards Act and relevant Maryland and District of Columbia statutes. This case is no different.

## COLLECTIVE ACTION ALLEGATIONS

36. Plaintiff is pursuing this action as an FLSA collective action on behalf of herself and all other similarly situated individuals who performed work duties as exotic dancers for Defendants at Defendants' Norma Jeans' exotic dance club at any time during the relevant period (September 2010 through the present).

37.  In the present case, the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members.

38. The essence of this entire case is that the Plaintiff and other similarly situated individuals were improperly classified  as independent contractors and were subject to a series of unlawful fees and fines resulting in Plaintiff and each putative class member receiving a "net negative" regular hourly rate.

39. Common to claims of Plaintiff and all class members is that each individual received

compensation from Defendants at a rate less than the minimum wage required under Maryland

and Federal Law.

40. Specifically, Plaintiff and each class member is seeking the difference between their "net

negative" regular hourly rate and the legally required minimum wage and statutory damages

from Defendants under the FLSA and MWHL.

41. In the present case, the number of class member is believed to exceed fifty (50) current and

former exotic dancers.

42. All class members are readily identifiable from information and records, on information and

belief, in the possession and control of the Defendants.


CAUSES OF ACTION
COUNT I
Violation of Federal Fair Labor Standards Act
(Minimum Wage)
(**Both Defendants**)

43. Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-42

above, as if each were set forth herein.

44. Section 206(a)(1) of the FLSA provides that no employer shall employ any employee for an

hourly wage of less than the federal minimum wage, currently $7.25 per hour.

45. At all times, Plaintiff and all other similarly situated individuals were "employees" covered

by the FLSA, 29 U.S.C. § 206(a)(1), and Defendants were their "employers."  Defendants, as

Plaintiff's and all other similarly situated individuals employer, was obligated to compensate and

all other similarly situated individuals for all hours worked at an hourly rate not less than the

Federal Minimum Wage.

46. At all times relevant, Defendants paid Plaintiff and all other similarly situated individuals

nothing for all hours worked.  In fact, when the deductions and withholdings that Defendants

took from Plaintiff and all other similarly situated individuals are factored in, Defendants paid

Plaintiff and all other similarly situated individuals less than nothing for hours worked each

week.  At all times relevant, such an hourly rate falls.

47. Defendants have failed and refused to compensate Plaintiff and all other similarly situated

individuals as required by the FLSA for numerous hours worked.  This failure and refusal to pay

compensation as required by the FLSA was willful and intentional, and not in good faith and

done with actual malice.

WHEREFORE, Plaintiff and all other similarly situated individuals ask this court to Declare the

actions of as described in the preceding paragraphs to be unlawful employment practices in

violation of the laws of United States and hold Defendant liable to Plaintiff and all other

similarly situated individuals under Count I for unpaid minimum wages in such amounts as are

proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-

judgment), punitive damages, attorney's fees, the costs of this action, and any other and further

relief this Court deems appropriate and enter a judgment against Defendant.

COUNT II<br>
Violation of the Maryland Wage Payment and Wage Collection Law<br>
(**Both Defendants**)

48. Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-47 above,

as if each were set forth herein.

49. Plaintiff was an "employee," and Defendants were her "employer" within the meaning of the

MWPCL §§ 3-501, *et seq.*  Under MWPCL § 3-505, Defendants, as Plaintiff's employers, were

obligated to pay Plaintiff all wages due for work that Plaintiff performed.

50. Habitually, over the course of Plaintiff's employment, Defendants made deductions and made

withholdings from Plaintiff's pay.  Such deductions and withholdings included, but were not

9

limited to, late fees, stage fees and illness fines. These deductions and withholdings made by Defendants were never authorized by Plaintiff.

51. Defendants' taking of deductions and withholdings from Plaintiff's pay resulted in a failure by Defendants to pay Plaintiff all wages due and promised for worked performed as required by the MWPCL. Defendants failure to pay Plaintiff all wages due for work performed, and taking of unauthorized and unlawful withholdings and deductions from Plaintiff's pay was willful and intentional, was not the result of any *bona fide* dispute between Plaintiff and Defendants, and was not in good faith and done with actual malice. Defendant made deductions from Plaintiffs' pay by way of charges, fees, and fines mandated by Defendants to be paid by Plaintiff to Defendants. Defendants made these deductions from Plaintiff's pay without any purpose or excuse allowable under MWPCL 3-503 and without written permission by Plaintiff. Defendants action of taking deductions from Plaintiff's wages was unlawful and constituted a violation of the MWPCL for which Defendants are liable to Plaintiffs as a matter of law.

WHEREFORE, Defendants are liable to Plaintiff under Count II, for all unpaid and/or improperly deducted wages in such amounts to be proven at trial, plus three (3x) times the amount of unpaid and/or improperly deducted wages as additional damages, interest (both pre- and post-judgment), attorney's fees, costs, punitive damages and any other further relief this Court deems appropriate.

## COUNT III

### Wrongful Discharge

### (Both Defendants)

52. Plaintiff re-pleads and re-alleges paragraphs 1 through 51, with the same force and effect as if set forth separately at length herein.

52. Plaintiff had taken a pre-planned vacation for the latter part of the summer and returned on September 9, 2013.

53. Ms. Whyte had worked the day shift at Norma Jeans Nite Club on September 9, 2013. Upon her returning to the Norma Jeans to work the night shift, she was stopped by Walter Robinson, the manager of the club. Mr. Robinson asked her if she had a conversation with anyone about this club. She told Mr. Robinson that she told people about the tip outs that the club was charging dancers. Mr. Robinson then told her they told him that she was fired and banned from the club because she was listed as a witness in a lawsuit against that was filed against the club.  Ms. Whyte asked Mr. Robinson who is they and he stated Pete Ireland and Lisa Ireland. Lisa is the owner of the club and Pete is her husband.

54. Plaintiff was named as a witness for another Plaintiff in Unique Butler v. PP &G, Inc. (WMN-13-430)  which is the same Defendant.

55. Plaintiff participated in a protected activity were she gave testimony of Defendant's illegal practices Defendant had been involved in.

56. Defendant received information that  Ms. Whyte as a witness in another FLSA case Unique Butler v. PP &G, Inc. (WMN-13-430) and she was going to proffer about Defendant's illegal activities of taking money from Plaintiff.

57. Plaintiff in Unique Butler v. PP &G, Inc. (WMN-13-430) listed Ms. Whyte as a witness and disclosed her proffered testimony to Defendant on August 8, 2013.

58. Her proffered testimony was that Defendant was taking dancer's fees and engaged in activities that would be a violation of the FLSA.

59. Plaintiff was a witness that was listed to testify at trial in the case of Unique Butler v. PP &G, Inc. (WMN-13-430).

60. Defendants' engaged in retaliatory practice against Plaintiff with malice or with reckless indifference to Plaintiff's Federally protected rights when they fired and banned Plaintiff from the club thirty days after Defendant was notified that Plaintiff was listed as a witness in  FLSA case Plaintiff in Unique Butler v. PP &G, Inc. (WMN-13-430).

61. Plaintiff was wrongfully discharged in retaliation for being a witness in a FLSA case against the Defendant and engaged in a federally protected activity. Defendants retaliated against her for engaging in a federally protected activity and there is a causal nexus between Plaintiff being a FLSA witness against the Defendant and the decision to discharge Plaintiff.

62. Defendants actions are in violation of public policy. They cannot fire someone for participating in Federally protected rights under FLSA.

63. The discharge of Plaintiff by the Defendant cause Plaintiff extreme emotional distress and mental anguish.

64.  Plaintiff seeks the following relief as set forth below.

65.  Compensatory damages and against Defendants in the amount of $250,000.

66.  Punitive damages against Defendants in the amount of $500,000.

67.  Expert witness fees.

68.  Attorney's fees and cost, and interest.

69.  Such other relief as he may be entitled.


**COUNT IV**

Retaliation - Wrongful Discharge FLSA

**(Both Defendants)**

70. Plaintiff re-pleads and re-alleges paragraphs 1 through 69, with the same force and effect as if set forth separately at length herein.

71. Plaintiff had taken a pre-planned vacation for the latter part of the summer and returned on September 9, 2013.

72. Ms. Whyte had worked the day shift at Norma Jeans Nite Club on September 9, 2013. Upon her returning to the Norma Jeans to work the night shift, she was stopped by Walter Robinson, the manager of the club. Mr. Robinson asked her if she had a conversation with anyone about this club. She told Mr. Robinson that she told people about the tip outs that the club was charging dancers. Mr. Robinson then told her they told him that she was fired and banned from the club because she was listed as a witness in a lawsuit against that was filed against the club.  Ms. Whyte asked Mr. Robinson who is they and he stated Pete Ireland and Lisa Ireland. Lisa is the owner of the club and Pete is her husband.

73. Plaintiff was named as a witness for another Plaintiff in Unique Butler v. PP &G, Inc. (WMN-13-430) which is the same Defendant.

74. Plaintiff participated in a protected activity were she gave testimony of Defendant's illegal practices Defendant had been involved in.

75. Defendant received information that  Ms. Whyte as a witness in another FLSA case Unique Butler v. PP &G, Inc. (WMN-13-430) and she was going to proffer about Defendant's illegal activities of taking money from Plaintiff.

76. Plaintiff in Unique Butler v. PP &G, Inc. (WMN-13-430) listed Ms. Whyte as a witness and disclosed her proffered testimony to Defendant on August 8, 2013.

76. Her proffered testimony was that Defendant was taking dancer's fees and engaged in activities that would be a violation of the FLSA.

77. Plaintiff was a witness that was listed to testify at trial in the case of Unique Butler v. PP &G, Inc. (WMN-13-430).

78. Defendants' engaged in retaliatory practice against Plaintiff with malice or with reckless indifference to Plaintiff's Federally protected rights when they fired and banned Plaintiff from the club thirty days after Defendant was notified about Plaintiff was listed in a FLSA case Plaintiff in Unique Butler v. PP &G, Inc. (WMN-13-430).

79. Plaintiff was wrongfully discharged in retaliation for being a witness in a FLSA case against the Defendant and engaged in a federally protected activity. Defendants retaliated against her for engaging in a federally protected activity and there is a causal nexus between Plaintiff being a FLSA witness against the Defendant and the decision to discharge Plaintiff.

80. FLSA prohibits retaliation for opting in, filing suit, testimony given or about to be given but not for an employee's voicing of a position on working conditions in opposition to an employer.

81. Under Section 215(a)(3) of the FLSA it is unlawful for a covered employee to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding."

82. The discharge of Plaintiff by the Defendants caused Plaintiff extreme emotional distress and mental anguish.

83. Plaintiff seeks the following relief as set forth below.

84. Compensatory damages and against Defendants in the amount of $250,000.

85. Punitive damages against Defendants in the amount of $500,000.

86. Expert witness fees.

87. Attorney's fees and cost, and interest.

88.  Such other relief as he may be entitled.


## JURY DEMAND

Plaintiff demands a trial by jury.



Respectfully submitted,


_____/s/_____
J. Wiggs, Esq.
The Wiggs Law Group, LLC
9701 Apollo Drive
Suite 301
Upper Marlboro, MD 20774
240-326-3711
Counsel for Plaintiff
Bar# 18231