IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAQIYA WHYTE                          *
                                      *
v.                                    *      Civil Action No. WMN-13-2806
                                      *
PP&G, INC. et al.                     *
                                      *
  *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

TANAE TAYLOR                          *
                                      *
v.                                    *      Civil Action No. WMN-13-3706
                                      *
PP&G, INC. et al.                     *
                                      *
  *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**<u>MEMORANDUM</u>**

Before the Court are multiple cross motions for Summary
Judgment in two related cases: <u>Whyte v. PP&G, Inc.</u>, Civ. No.
WMN-13-2806 (<u>Whyte</u>) and <u>Taylor v. PP&G, Inc.</u>, Civ. No. WMN 13-
3706 (<u>Taylor</u>).  Defendant PP&G, Inc. filed a Motion for Partial
Summary Judgment and Defendant Lisa Ireland filed a Motion for
Summary Judgment in each case.  <u>See</u> <u>Whyte</u> ECF No. 65 and <u>Taylor</u>
ECF No. 39.  Plaintiffs Raqiya Whyte and Tanae Taylor, in their
Oppositions, also cross moved for partial summary judgment.  <u>See</u>
<u>Whyte</u> ECF No. 70 and <u>Taylor</u> ECF No. 44.  The motions are fully
briefed and ripe for review.  Upon a review of the papers,
facts, and applicable law, the Court determines that no hearing
is necessary, Local Rule 105.6, and that Defendants' motions
will be granted and Plaintiffs' motions will be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant Lisa Ireland owns Defendant PP&G, a corporation which owns and operates Norma Jean's Nite Club (Norma Jean's), a night club located in Baltimore that features semi-nude female dancers.  Plaintiff Raqiya Whyte worked at Norma Jean's from September 2010 to September 2013 while Plaintiff Tanae Taylor worked at the club from December 9, 2010, to December 13, 2013.  In their lawsuits, Plaintiffs bring a cause of action under the Federal Labor Standards Act, 29 U.S.C. §§ 201 et seq. (FLSA) for Defendants' alleged failure to pay a minimum wage to its workers in violation of Section 206 of the FLSA (Count I of both Taylor and Whyte), failure to pay overtime in violation of Section 207 (Count II of Taylor), and retaliation in violation of Section 215(a)(3) (Count IV of Whyte).[1]

Ms. Ireland supervises the finances of Norma Jean's, signs checks, and maintains pertinent licenses for the club's operation.  She appeared at the club on a regular basis to attend to those tasks.  The day to day operation of Norma Jean's is delegated to one manager, who hires and fires dancers, sets

---

[1] Ms. Whyte previously brought one count of a violation of the Maryland Wage Payment and Wage Payment Law (Count II), which was voluntarily dismissed, and one count of Wrongful Discharge (Count III) which was omitted from the Amended Complaint.  See ECF Nos. 12 and 32.  Ms. Whyte also dismissed the collective action aspect of Count I.  See ECF No. 21.

fees, manages scheduling, orders supplies, pays bills, and manages disruptions and disputes that arise at Norma Jean's. The manager – currently Jeanean Lawson – is provided wide latitude and discretion in conducting the club's business.  If an incident occurs or a staffing decision is made, a note is sent from the manager to Ms. Ireland, without further action. When a management transition occurs, the old manager trains the new hire.  PP&G also employs a bookkeeper to handle tax issues.

Plaintiffs earned money from patrons for a variety of entertainment forms, the prices of which were set by the club but regularly altered on a case-by-case basis.  Plaintiffs were then charged fees by Norma Jean's that came from the money they received from guests of the club.  During the time Plaintiffs performed at the night club, Norma Jean's did not keep timesheets or maintain W-2s for its dancers.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the record before the court "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 377 U.S. 317, 322-23 (1986).  A fact is material if it might "affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether there is a genuine issue of material fact, the Court

3

"views all facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party." Housley v. Holquist, 879 F. Supp. 2d 472, 479 (D. Md. 2011) (citing Pulliam Inv. Co. v. Cameo Prop., 810 F.2d 1282, 1286 (4th Cir. 1987)).

When both parties file motions for summary judgment, the court applies the same standards of review. ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment."). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Accident and Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985).

## III. DISCUSSION

### A. Defendants' Motions for Partial Summary Judgment

Plaintiffs have brought this action under the FLSA alleging that they were employees of Defendants, who failed to pay them a minimum wage in violation of the act. Employers who are found to have violated the FLSA for failure to pay a minimum wage are liable for unpaid compensation and liquidated damages. 29 U.S.C. § 216(b). Ms. Ireland has moved for summary judgment on

the entirety of Plaintiffs' claims, while both Defendants have moved for summary judgment on the issues of the statute of limitations, punitive damages, and Ms. Whyte's claim of retaliation.

### a. Ms. Ireland is not an "employer" under the FLSA

Ms. Ireland has moved for summary judgment in her favor as to both Plaintiffs on the grounds that she is not an "employer" under the FLSA. Plaintiffs retort that "[t]he fact that Lisa Ireland has no roles in hiring and firing of any exotic dancers is unbelievable." Whyte ECF No. 70 at 5. The evidence, though, presents a clear and consistent picture that Ms. Ireland was disengaged from the day-to-day operations of Norma Jean's, especially as they related to engaging and managing dancers for the club.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In determining whether an individual is an "employer" for the purposes of the FLSA, the Court analyzes the economic realities of the relationship between the employee and the alleged employer. Under the economic reality test, an employer is someone who "(1) has the authority to hire and fire employees; (2) supervises and controls work schedules or employment conditions; (3) determines the rate and method of payment; and (4) maintains employment

records." <u>Caseres v. S & R Mgmt. Co.</u>, Civ. No. 12-AW-1358, 2012
WL 5250561, at *3 (D. Md. Oct. 24, 2012).  In this district,
courts have also looked to "the person's job description, his or
her financial interest in the enterprise, and whether or not the
individual exercises control over the employment relationship."
<u>Gionfriddo v. Jason Zink LLC</u>, 769 F. Supp. 2d 880, 890 (D. Md.
2011).  The inquiry does not depend on "isolated factors but
rather upon the circumstances of the whole activity."
<u>Rutherford Food Corp. v. McComb</u>, 331 U.S. 722, 730 (1947).

Although the Court looks to the financial interest in the
enterprise to evaluate whether a party is an employer, the fact
that Ms. Ireland is the owner of PP&G is not, by itself,
sufficient to establish that she was an employer under the FLSA.
Although Plaintiffs argue that Ms. Ireland "cannot pass the buck
to a subordinate on this issue as [PP&G] is her company," <u>Whyte</u>
ECF No. 70 at 25, "an individual's status as a high-level
corporate shareholder or officer does not automatically impart
'employer' liability to that individual. . . ." <u>Pearson v.
Prof'l 50 States Prot.</u>, Civ. No. 09-RDB-3232, 2010 WL 4658188,
at *10 (D. Md. Sept. 15, 2014).  Ms. Ireland's duties at Norma
Jean's relate to her financial interest in the club, as she
signs checks, approves purchases made by the manager, engages
contractors for capital improvements, and files taxes.  Her
regular activities at the time of Plaintiffs' employment did not

involve managing or engaging in personnel matters beyond securing contract signatures.

Plaintiffs characterize Ms. Ireland's involvement as a rule that "[a]nything that deals with money or a problem must go through Mrs. Ireland." Whyte, ECF No. 70 at 14. A full review of the record, however, shows that Ms. Ireland's approval was often a formality. She signed checks that were otherwise drafted by the manager and provided summary approval of acquisitions made by the manager. ECF No. 70-15 27:12-21 (Lawson Dep.). Ms. Ireland was notified of terminations or altercations at the club by note from the manager after the fact, and there is no evidence to suggest that Ms. Ireland required changes in policy or procedure as a result of these events. Id. 38:12-39:5.

Further, evidence demonstrates that Ms. Ireland exercised no control over the putative employment relationship between the dancers and PP&G. There is a long-standing practice at Norma Jean's that the manager serves as the sole person in charge of overseeing the hiring and firing of dancers at the club. Lawson Dep. 6:16-8:21; ECF No. 70-1 72:19-21 (Robinson Dep.); ECF No. 70-16 6:21-7:1 (Ireland Dep.). The manager received applications, interviewed prospective dancers, and selected dancers from the pool of applicants. Lawson Dep. 7:18-8:21, 12:6-13:3. There is no evidence that Ms. Ireland was present

7

during the Plaintiffs' interviews and auditions.  If a dancer or employee needed to be fired, Ms. Ireland was generally notified after the decision was made.[2]  The current manager, Ms. Lawson, testified that she learned how to operate the club, including how to manage dancers, from her immediate predecessor.

The manager was the individual responsible for monitoring the work activities of the dancers and maintaining their working conditions.  Day-to-day operations were left to the discretion of the manager.  Lawson Dep. 29:15; Ireland Dep. 58:10-14.  The manager enforced the maintenance fee scheme that was established by Norma Jean's first manager, Garrett MacMillion.  Ms. Ireland testified in her deposition that she never directed a manager to deviate from the fees assessed by managers.  The manager fielded complaints or concerns from the dancers and made decisions related to worker safety and comfort.  Lawson Dep. 36:7-8.  Finally, Ms. Ireland did not maintain employment records for the dancers during the time that Plaintiffs danced at Norma Jean's.  Testimony suggests that, prior to the current timesheet system, any simulacrum of employment records were kept by the manager in the form of a list of dancers and the number of drinks bought

---

[2] Ms. Whyte testified in her deposition that the manager at the time, Walter Robinson, told her that Ms. Ireland "said [Ms. Whyte] could not work there."  ECF No. 70-18 190:18-20 (Whyte Dep.).  Because this statement is clearly hearsay, it would be inadmissible at trial, and accordingly cannot be considered at the summary judgment stage.  Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 535 (D. Md. 2007).

for them.   Lawson Dep. 50:7-51:3.   The lists were thrown away at the end of the night.

Plaintiffs, in their oppositions, cut and paste deposition excerpts that they claim undermine Ms. Ireland's position that she is not involved in the management of dancers.   The deposition testimony cited is either irrelevant to the inquiry at hand or actually bolsters Ms. Ireland's argument.   See, e.g., Whyte ECF No. 70 at 10 (quoting Lawson Dep., 6:16-7:8) ("Q: [W]ho trained you to be a manager? . . .   A: Lisa showed me some of the things, but Walt showed me pretty much everything.   Q: Now, can you describe what Lisa showed you?   A: How to open the safe and things of that nature.").   Plaintiffs also advance a theory that Ms. Ireland was an employer of the dancers at Norma Jean's because she retained firing power over the manager, and the manager, in turn, had hiring and firing power over the dancers.   They argue that the manager

> "had control over Norma Jean's Nite Club employees'
> schedules, responsibilities, and duties, or conditions
> to work at the Club.   He also states that Lisa Ireland
> is his only supervisor.   Since Lisa Ireland is his
> only supervisor she has apparent authority and has
> supervised control over the Norma Jean's Nite Club
> employees' schedules, responsibilities, and duties, or
> conditions to work at the Club through her designee
> Mr. Robinson."

Whyte, ECF No. 70 at 8.   In addition to erroneously referring to apparent agency theory, Plaintiffs do not present any evidence

to suggest that the manager position was essentially a conduit for the desires and wishes of Ms. Ireland.[3]

Although Ms. Ireland is not quite the "absentee owner" she argues to be, she has relinquished control of all activities related to relevant employment matters to the manager of Norma Jean's.  The managers during the relevant time in question, Mr. Robinson and Ms. Lawson, were in charge of all policies and decisions related to the potential employment relationship between Norma Jean's and the dancers, and took action free of input from Ms. Ireland.  As a result, there was no employer-employee relationship between Ms. Ireland and Ms. Whyte or Ms. Taylor sufficient to give rise to liability under the FLSA. Accordingly, summary judgment will be granted in Ms. Ireland's favor.

### b. The Statute of Limitations is Two Years for Want of a Willful Violation

Defendants argue that Whyte and Taylor's claims are limited in scope to two years before their claims were filed.  Actions for alleged violations of the FLSA's provisions "shall be

---

[3] Plaintiffs also argue that the Court should deny Ms. Ireland's motion for summary judgment because "[u]nder the Iqbal plausibility standard, [Plaintiffs'] allegations are sufficient to state a claim that the individual defendants [sic] bear liability under the FLSA." Whyte ECF No. 70 at 26.  Ashcroft v. Iqbal, 556 U.S. 662 (2009), governs motions to dismiss, not the motions for summary judgment under review here, and more is required than "mere plausibility" to deny judgment to Ms. Ireland.

forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "As such, the FLSA provides for two potential limitations periods, the application of which turns on whether the FLSA violations were conducted 'willfully.'" Gionfriddo, 769 F. Supp. 2d at 890. Unless Taylor and Whyte can show that Norma Jean's willfully violated the FLSA – which Defendants contend they cannot - their claims are limited to violations occurring after September 24, 2011, for Whyte and December 9, 2011, for Taylor.

In order to understand much of Plaintiffs' remaining arguments, the Court must refer to a preceding case brought by another dancer at Norma Jean's. In an action filed and resolved before Ms. Whyte or Ms. Taylor brought their actions, Ms. Unique Butler, filed suit against PP&G on February 8, 2013. See Unique S. Butler v. PP&G, Inc., Civ. No. 13-WMN-430. The Court granted in part and denied in part Ms. Butler's motion, determining that Ms. Butler was an employee of PP&G, and that PP&G was liable to Ms. Butler under the FLSA for wages and liquidated damages, but that Ms. Butler had not demonstrated that she was entitled to reimbursement under Maryland law. Ms. Whyte spoke with Ms. Butler's attorney regarding the opportunity to testify. She

alleges that this meeting was the reason that Defendants fired her from Norma Jean's.

In order to show willfulness, plaintiffs must show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Anything less is insufficient to support a finding of willfulness, as "[m]ere negligence on the part of the employer with regard to compliance with the FLSA is not sufficient to prove willfulness." Gionfriddo, 769 F. Supp. 2d at 890.

Plaintiffs offer that Defendants committed willful violations since Ms. Butler was found by this Court to be an employee of PP&G under the FLSA, and argues that "[i]t is inconceivable that when a President of a company learns about a lawsuit against their company and learns that there is a Federal ruling telling the company that their practice is illegal under Federal law that they would continue with the illegal federal practice."[4]  Whyte, ECF No. 70 at 28.  The lawsuit was filed by Ms. Butler on February 28, 2013, and the Court granted partial summary judgment to Ms. Butler on November 7, 2013.  Neither of

---

[4] Plaintiffs copy and paste this statement many times throughout their oppositions and cross-motions for summary judgment.  The Court notes that the repeated use of "inconceivable" is subject to quickly diminishing returns.  See The Princess Bride (ACT III Communications 1987) ("You keep using that word.  I do not think it means what you think it means.").

these events is sufficient to establish a willful violation.
The fact that a dancer filed suit against PP&G under the FLSA
does not establish that PP&G or Ms. Ireland knew of their
obligations under FLSA and recklessly disregarded them during
the period of Ms. Whyte and Ms. Taylor's employment.  In
addition, the Court's opinion and order regarding Ms. Butler was
issued after Ms. Whyte was fired and a mere month before Ms.
Taylor left Norma Jean's.  Plaintiffs fail to present any
evidence to show that at the time of the alleged FLSA
violations, Defendants were aware of their obligations under
FLSA and intentionally disregarded them.  In fact, Ms. Ireland
testified that she was "not aware of the federal law before the
lawyer with Ms. Butler's case presented it to me."  Ireland Dep.
Trans. 41:7-9.  Failing to show any other evidence that
Defendants willfully violated the FLSA, Plaintiffs are subject
to the two year statute of limitations.

### c. Defendants' Unopposed Motion as to Retaliation and Punitive Damages in Whyte Shall be Granted

In Whyte, Defendants have moved for summary judgment on Ms.
Whyte's count of retaliation under the FLSA (Count IV) and her
claim for punitive damages, in addition to the above arguments.
See Whyte ECF No. 65 at 14-20. Ms. Whyte appears to have
abandoned her claims related to retaliation and punitive damages
as she makes no response in her opposition to Defendant's

arguments.[5]   See Grant-Fletcher v. McMullen & Drury, P.A., 964 F.
Supp. 2d 514, 525 (D. Md. 2013) (opining that the plaintiff
appeared to have abandoned claims by not responding to arguments
directed at those claims in the defendant's summary judgment
motion).   The Federal Rules of Civil Procedure provide that "if
the adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party."  Fed.
R. Civ. P. 57(e).   For the reasons that follow, the Court finds
that summary judgment for Defendants is appropriate with regards
to both arguments.

    Section 215(a)(3) of the FLSA makes it unlawful for a
covered employer to "discharge or in any manner discriminate
against any employee because such employee has filed any
complaint or instituted or caused to be instituted any
proceeding under or related to this chapter, or has testified or
is about to testify in any such proceeding . . . ."  Kasten v.
Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1329,
___ U.S. ____ (2011) (quoting 29 U.S.C. § 215(a)(3)).  In order
to evaluate whether such a case of retaliation occurred, the

---

[5] Ms. Whyte and Ms. Taylor – who are represented by the same
attorney, Jimmy A. Bell, whose signature is on their submissions
to the Court - have submitted substantially the same
Opposition/Cross Motion for Summary Judgment and Reply in both
cases.  In some areas, Plaintiffs' counsel did not ensure that
the correct Plaintiff's name was used.  It would not be
difficult to surmise that counsel made the assumption that
Defendants filed the same motion for summary judgment, despite
the different claims of his clients.

Court uses the McDonnell Douglas scheme employed in Title VII cases. Darveau v. Detecon, Inc., 515 F.3d 334, 342 (4th Cir. 2008). To make a prima facie case of retaliation under the FLSA, a plaintiff must show that: (1) she engaged in an activity protected by the FLSA; (2) she suffered adverse action by the employer subsequent to the protected activity; and (3) a causal connection that exists between the employee's activity and the employer's adverse action. Mould v. NJG Food Serv., Inc., 37 F. Supp. 3d 762, 778 (D. Md. 2014). Ms. Whyte has failed to demonstrate that she engaged in protected activity under the FLSA or that Defendants retaliated against her for such activity.

Ms. Whyte pleads in her complaint that, since she had expressed willingness to testify in Ms. Butler's FLSA suit, she engaged in the protected activity of being "about to testify" in a proceeding under the FLSA. Her complaint alleges that: "Defendant Lisa Ireland and her husband [told Walter Robinson] to fire Plaintiff Whyte and ban her from the club because she gave testimony against the club and she was listed as a witness against the club in the FLSA case for Unique Butler," ECF No. 32 ¶ 44; she "gave testimony of Defendant's illegal practices defendant had been involved in;" and she "was willing to testify against PP&G Inc. . . . for violating [the] FLSA." Id. ¶ 45. It is undisputed that Ms. Whyte did not provide a deposition in the

15

Butler case nor did she testify in a trial on Ms. Butler's claims.  Ms. Whyte, however, has failed to produce evidence that she was about to engage in the activity of testifying or giving a deposition.  The Fourth Circuit, in determining what constitutes an eligible proceeding under the FLSA retaliation provision, strictly construes the definition of testimony as "amount[ing] to statements given under oath or affirmation." Ball v. Memphis Bar-B-Q Co., Inc., 228 F.3d 360, 364 (4th Cir. 2000).  Therefore, in order for Ms. Whyte's activity with regard to Ms. Butler's case to be protected, there must be conclusive evidence that Ms. Whyte was about to provide statements under oath, either through deposition or trial testimony.  In her deposition for this action, Ms. Whyte testified that Ms. Butler asked her to be a witness, that she visited Ms. Butler's attorney once and told him about the wage and hour practices, and signed a piece of paper while there.  Whyte Dep. 125-127. There is no evidence that the signed piece of paper – which may have constituted a statement made under affirmation – left the attorney's office and a review of the docket in Butler shows that the signed piece of paper was never submitted to the Court. There is also no evidence that Ms. Whyte's name appeared on a list of witnesses for Ms. Butler's case.  In addition, Ms. Whyte testified that she never received summons or subpoena to testify

and that she did not give a deposition in Ms. Butler's case.
Whyte Dep. 127.

The sole support for Ms. Whyte's contention that she was
retaliated against is a conversation Ms. Whyte recalled between
herself and the manager at the time, Mr. Walter Robinson.
According to Ms. Whyte:

> "The day I got fired . . . he asked me, he said . . .
> did you answer any questions about a case against us,
> and . . . . I said no at first. Then I said you
> what, yeah, I did. I said they asked me questions
> about the club . . . I did answer some questions, but
> I just told the truth, that's all. He was like well,
> because of that, you're fired because, you know,
> you're witnessing a case against us. That's what was
> told to me."

Whyte Dep. 128:14-129:5. Although from this evidence one could
conclude that her firing may have been directly related to her
visit to Ms. Butler's lawyer, that visit does not constitute
protected activity under the FLSA. As the Fourth Circuit
explained: "[T]he statutory language [of the FLSA] clearly
places limits on the range of retaliation proscribed by the Act.
It prohibits retaliation for testimony given or about to be
given but not for an employee's voicing of a position on working
conditions . . . . Congress has crafted such broader retaliation
provisions elsewhere, such as in Title VII . . . which prohibits
employer retaliation because an employee has 'opposed any
practice' . . . or 'participated in any manner in an
investigation, proceeding or hearing under this subchapter.'

17

But the cause of action for retaliation under the FLSA is much more circumscribed." Memphis Bar-B-Q, 228 F.3d at 364 (emphasis in original). Protected activity under the FLSA is limited to testimonial activity, actual or anticipated. There is no evidence to suggest that Ms. Whyte's sole meeting with the attorney went beyond an informational session in which Ms. Whyte provided her opinion regarding Ms. Butler's situation and as a result is not protected under the FLSA. The Defendants' motion for summary judgment as to Count IV of Ms. Whyte's complaint is granted.

With summary judgment on Ms. Whyte's claim of retaliation granted in favor of Defendants, the question of whether punitive damages are available becomes moot. Section 216(b) of Title 29 of the United States Code provides:

> [a]ny employer who violates the provisions of section 206 or 207 [the FLSA's minimum wage and overtime wage provisions] . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) [the FLSA's anti-retaliation provision] . . . shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) . . . including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). The issue of whether punitive damages are available under the FLSA arises from the phrase "shall be liable

for such legal or equitable relief as may be appropriate." <u>See</u> <u>Randolph v. ADT Sec. Services, Inc.</u>, Civ. No. 09-DKC-1790, 2012 WL 2234362, at *3 (D. Md. June 14, 2012) (Holding that, even if punitive damages were available, such relief was not appropriate where Plaintiff failed to prove that retaliation was committed recklessly or with malice). This phrase is attached to liability arising from a violation of the FLSA's anti-retaliation provision in Section 215(a)(3). Section 216(b) does not include broad categories of legal and equitable relief for violations of overtime or minimum wage provisions, explicitly limiting relief to unpaid compensation and liquidated damages. As the Court has awarded summary judgment to Defendants on anti-retaliation, Ms. Whyte is limited in recovery to the remedy attached to Section 206, namely unpaid minimum wages and liquidated damages.[6]

## B. Plaintiffs' Motions for Partial Summary Judgment

Plaintiffs have moved for partial summary judgment, asking the Court to find that they were employees of Defendants on "collateral estoppel" grounds. Their theory of "collateral

---

[6] Defendants did not raise the issue of punitive damages in <u>Taylor</u>. In her complaint, however, Ms. Taylor "ask[s] this court to . . . hold defendants liable to Plaintiff . . . for punitive damages . . . and any other and further relief this Court deems appropriate . . . ." <u>Taylor</u> ECF No. 7 ¶ 33. As Ms. Taylor brings claims for minimum wage and overtime violations under Sections 206 and 207 only, her relief is similarly limited to the first sentence of Section 216(b).

estoppel" is as follows: "Plaintiff[s] claim[] just like
Plaintiff Butler did . . . .  So, Defendants in this case still
improperly classified Plaintiff[s'] work as [] exotic dancers as
[] independent contractors and failed to pay [them] a minimum
hourly wage."[7]  In essence, because Ms. Whyte and Ms. Taylor made
the same claim as Ms. Butler, the Court should find that
Defendants violated the FLSA.

The doctrine of collateral estoppel precludes "the
relitigation of issues of fact or law that are identical to
issues which have been actually determined and necessarily
decided in prior litigation in which the party against whom is
asserted had a full and fair opportunity to litigate."
Sensormatic Sec. Corp. v. Sensormatic Electronics Corp., 455 F.
Supp. 2d 399, 410 (D. Md. 2006).  Non-mutual collateral estoppel
is when a non-party to the previous action seeks to prevent a
defendant in the current action from relitigating issues already
decided against the defendant in the previous case.  S.E.C. v.
Resnick, 604 F. Supp. 2d 773, 778 (D. Md. 2009).

In order to prove that collateral estoppel applies, the
Plaintiffs must establish five elements: "(1) that 'the issue
sought to be precluded is identical to one previously litigated'

---

[7] This section of Ms. Whyte's motion refers to "Plaintiff Taylor"
as opposed to "Plaintiff Whyte."  Defendants argue that this
error is fatal to Ms. Whyte's motion.  While the drafting may be
slipshod and careless, it is clear that the argument is made for
Ms. Whyte's case and will be considered as such.

(element one); (2) that the issue was actually determined in the prior proceeding (element two); (3) that the issue's determination was a 'critical and necessary part of the decision in the prior proceeding' (element three); (4) that the prior judgment is final and valid (element four); and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum' (element five)." Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006).

Plaintiffs have failed to demonstrate that the issues in these actions and Ms. Butler's are identical. They have pointed to the fact that they bring the same causes of action against the same defendant, yet they fail to identify specific facts establishing that the same relationship existed between themselves and Defendants as Ms. Butler and Defendants such that the issue of whether they are employees is to be considered well settled. The question of whether Ms. Whyte and Ms. Taylor were employees of PP&G relies on evaluating the "economic reality" between the parties. Plaintiffs have not shown that the economic reality of their relationship to Defendants was identical to the economic reality of Ms. Butler's relationship

to PP&G.  Accordingly, the Court will deny summary judgment to Ms. Taylor and Ms. Whyte on the grounds of collateral estoppel.[8]

Plaintiffs have also moved for summary judgment on Defendants' alleged failure to pay a minimum wage and their entitlement to liquidated damages.  The Court declines to address these arguments at this time as Plaintiffs failed to address on the merits the predicate issue of whether they were "employees" under the FLSA.

Finally, Plaintiffs move for summary judgment on Defendants' counter claims for breach of contract and unjust enrichment on the ground that in her deposition, when asked "How much do the girls owe you?" Ms. Ireland replied "They don't owe me anything."  Plaintiffs misidentify Ms. Ireland as the 30(b)(6) designee for PP&G, when it was in fact the manager, Jeanean Lawson, who provided deposition testimony as PP&G's representative.  Ms. Ireland's testimony is her own, and cannot be imputed to PP&G.  In addition, the statement "They don't owe me anything" when taken in the light most beneficial to Defendants, asserts that no debts were owed by Plaintiffs to Ms.

---

[8] In their Reply briefs, Plaintiffs argue that Defendants conceded the issue of whether they violated the FLSA. <u>Whyte</u> ECF No. 76 at 1.  Not only is raising an entirely new issue in a Reply improper, the cited deposition testimony is irrelevant, as it refers to the practice of Defendants in 2014, after Plaintiffs worked at Norma Jeans.

Ireland.   Summary judgment will be denied as to Defendants'
counterclaims.

**IV. CONCLUSION**

For the reasons stated above, the Defendant's Motion for
Summary Judgment will be denied.   A separate order shall issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: May 26, 2015